**No. 2012-1393**

========================================================

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

————————

ALMOND BROS. LUMBER CO.; BIGHORN LUMBER COMPANY,
BLUE MOUNTAIN LUMBER PRODUCTS, LLC; CF INDUSTRIES,
INC. (formerly known as Clearwater Forest Industries); COLLINS
PINE COMPANY; CODY LUMBER, INC.; D.R. JOHNSON
LUMBER CO.; EMPIRE LUMBER CO.; F.H. STOLTZE LAND
& LUMBER COMPANY; GRAYSON LUMBER CORP.;
HAMPTON RESOURCES, INC.; HARWOOD PRODUCTS, INC.;
HEDSTROM LUMBER COMPANY, INC.; IDAHO VENEER
COMPANY; INTERMOUNTAIN RESOURCES, LLC; MOUNTAIN
VALLEY LUMBER CO., INC.; NEIMAN SAWMILLS, INC.;
NORTHERN LIGHTS TIMBER & LUMBER, INC.; OCHOCO LUMBER
COMPANY; PINECREST LUMBER CO. (division of Green Bay Packaging,
Inc.); PRECISION PINE & TIMBER, INC.; ROSBORO, LLC; RSG FOREST
PRODUCTS, INC.; RUSHMORE FOREST PRODUCTS, INC.; SANDERS
WOOD PRODUCTS, INC.; SPANISH TRAIL LUMBER CO., LLC;
SUNDANCE LUMBER COMPANY, INC.; THRIFT BROTHERS
LUMBER CO., INC.; TRINITY RIVER LUMBER COMPANY;
TRIPLE T STUDS CO.; VIKING LUMBER COMPANY, INC.;
WARM SPRINGS FOREST PRODUCTS INDUSTRIES;
WESTERN CASCADE INDUSTRIES LLC; WRENN BROTHERS,
INC.; WYOMING SAWMILLS, INC.; and ZIP-O-LOG MILLS, INC.

Plaintiffs-Appellants,

and

HERBERT LUMBER CO.,

Plaintiff,

v.

UNITED STATES and RON KIRK, United States Trade Representative,

Defendants-Appellees.

————————

Appeal from the United States Court Of
International Trade in Case No. 08-cv-00036,
Judge Richard K. Eaton

————————

**CORRECTED COMBINED PETITION FOR REHEARING
OF PLAINTIFFS-APPELLANTS ALMOND BROS. LUMBER CO., *ET AL.***

————————

Alan I. Saltman
Alan F. Holmer
SMITH, CURRIE & HANCOCK LLP
1025 Connecticut Avenue, N.W.
Suite 600
Washington, D.C.  20036
(202) 452-2140

Counsel for Plaintiffs-Appellants

Dated:  August 16, 2013

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*ALMOND BROS. LUMBER CO., et al.  v. THE UNITED STATES*

No. 2010-1389

## CERTIFICATE OF INTEREST

Counsel for Appellants, Almond Bros. Lumber Co., *et al*., certifies the following:

1.     The full name of every party or amicus represented by me is:

Almond Bros. Lumber Co.; Bighorn Lumber Company; Blue Mountain Lumber Products, LLC; CF Industries, Inc.; Collins Pine Company; Cody Lumber, Inc.; D.R. Johnson Lumber Co.; Empire Lumber Co.; F.H. Stoltze Land & Lumber Company; Grayson Lumber Corp.; Hampton Resources, Inc.; Harwood Products, Inc.; Hedstrom Lumber Company, Inc.; Herbert Lumber Co.; Idaho Veneer Company; Intermountain Resources, LLC; Mountain Valley Lumber Co., Inc.; Neiman Sawmills, Inc.; Northern Lights & Lumber, Inc.; Ochoco Lumber Company; Pinecrest Lumber Co., Division of Green Bay Packaging, Inc.; Precision Pine & Timber, Inc.; Rosboro, LLC; RSG Forest Products, Inc.; Rushmore Forest Products, Inc.; Sanders Wood Products, Inc.; Spanish Trail Lumber Co., LLC; Sundance Lumber Company, Inc.; Thrift Brothers Lumber Co., Inc.; Trinity Lumber Company; Triple T Studs Co.; Viking Lumber Company, Inc.; Warm Springs Forest Products Industries; Western Cascade Industries LLC; Wrenn Brothers, Inc.; Wyoming Sawmills, Inc.; Zip-O-Log Mills, Inc.

2.     The name of the real party in interest represented by me is:

N/A

3.     All the parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Alan I. Saltman, Alan F. Holmer, Ruth G. Tiger and Aron C. Beezley of Saltman & Stevens, P.C. and Alan I. Saltman and Alan F. Holmer of Smith, Currie & Hancock LLP

| | |
|---|---|
| August 16, 2013 | */s/ Alan I. Saltman* |
| Date | Signature of Counsel |
| | Alan I. Saltman |
| | Printed Name of Counsel |

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

Table of Authorities ................................................................. ii

Statement of Counsel ............................................................... 1

I.      Introduction.................................................................. 2

II.     Points of Law Or Fact Overlooked Or Misapprehended By The
        Panel In Affirming The Dismissal Of Count II ................................ 3

        A.      Its Decision Turns On Two Reasonless Arguments That
                The Panel Incorrectly Attributed To Appellants, And

                The Panel's Interpretation Of § 2411(c)(4) Not Only
                Permits Absurd Results But Renders Meaningless
                Substantial Parts Of The Statute .......................................... 3

III.    Conclusion .................................................................... 15

Addendum

Certificate of Service

# TABLE OF AUTHORITIES

**CASES**                                                   **PAGE**

*Almond Bros. Lumber Co. v. United States*,
No. 08-00036, -- F.Supp.2d --, 2012 WL 1372173
(Ct. Int'l Trade Apr. 19, 2012) .......................................................................7

*Almond Bros. Lumber Co. v. United States,*
No. 12-1393, slip op. (Fed. Cir. July 1, 2013).......................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................1, 15

*Haggar Co. v. Helvering*,
308 U.S. 389 (1940)................................................................................1, 10

*Lisanti v. Office of Pers. Mgmt.*,
573 F.3d 1334 (Fed. Cir. 2009) ..............................................................1, 10

*Offshore Logistics, Inc. v. Tallentire*,
477 U.S. 207 (1986).....................................................................................12

*Shoshone Indian of Wind River Reservation v. United States*,
364 F.3d 1339 (Fed. Cir. 2004) ..................................................................12

*Telecare Corp. v. Leavitt*,
409 F.3d 1345 (Fed. Cir. 2005) ..............................................................1, 12

**STATUTES AND REGULATIONS**

19 U.S.C. § 2411(c)(1)(D)(iii)(I) ........................................................*passim*

19 U.S.C. § 2411(c)(4)(B) ................................................................ 11-14

71 Fed. Reg. 31,336 (June 1, 2006) ...........................................................6

**MISCELLANEOUS**

2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES
    AND STATUTORY CONSTRUCTION § 45.12 (7th ed. 2012) ..............................10

Continued Dumping and Subsidy Offset Act of 2000,
    Pub. L. No. 106-387, § 1002, 114 Stat. 1549 (codified as
    amended at 19 U.S.C. § 1675c) (Oct. 28, 2000)), repealed
    by Deficit Reduction Act of 2005, Pub. L. No. 109-171,
    § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).................8

NAICS Association, Frequently Asked Questions, comment 18,
    available at http://www.naics.com/faq.htm (last accessed
    Aug. 5, 2013) ...........................................................................4

NAICS Association, NAICS Codes by Industry, available at
    http://www.naics.com/search.htm (last accessed Aug. 5, 2013)....................4

NAICS Association, Six-Digit NAICS Codes & Titles, available at
    http://www.naics.com/free-code-search/sixdigitnaics.html?code=3133
    (last accessed Aug. 5, 2013) ...........................................................4

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel's decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this Court:  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940); *Lisanti v. Office of Pers. Mgmt.*, 573 F.3d 1334, 1339 (Fed. Cir. 2009); *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1355 (Fed. Cir. 2005).

Based on my professional judgment, I believe this appeal requires an answer to the following precedent-setting question of exceptional importance:  Whether the United States Trade Representative ("USTR") can simply ignore the plain language of 19 U.S.C. § 2411(c)(4), which mandates that "compensatory trade benefits" exacted from foreign governments that have committed unfair trade practices benefit the economic sector that includes the domestic industry adversely affected by the unfair trade practice the USTR is seeking to curb, and cause those benefits to be distributed without regard to whether they offset the undesired effect caused by the unfair trade practice.

*/s/ Alan I. Saltman*
Attorney of Record for Almond Brothers, *et al.*

1

## I.    Introduction

In 1988, Congress enacted legislation that authorized the United States Trade Representative to exact compensatory trade benefits from foreign countries as part of agreements to curb their unfair trade practices.  In the instant case, the USTR exacted $500 million from Canada as "compensatory trade benefits" in connection with the 2006 Softwood Lumber Agreement ("SLA").  The statute further provided that, unless the USTR decided to distribute those funds to an economic sector that bore no relation with the trade practice being curbed, the trade agreement must provide for the distribution of those compensatory trade benefits to the economic sector which included the industry adversely affected by Canada's unfair practices or a closely related sector.

Here, pursuant to the SLA, the $500 million was distributed to only a small fraction of the members of the economic sector that included the affected industry. More importantly, it was distributed without regard to whether payment to each recipient offset any undesired effect suffered by it as a result of the unfair trade practice being curbed and without regard to the fact that many sector members that were known to have been adversely affected received absolutely nothing.

In reaching its conclusion that doing so did not violate the statute, the panel disregarded not only the fundamental precept that a statute should not be construed to render meaningless words deliberately chosen by Congress, but also the wise adage that "Good sense is good law."

## II. Points Of Law Or Fact Overlooked Or Misapprehended By The Panel In Affirming The Dismissal Of Count II

### A. Its Decision Turns On Two Reasonless Arguments That the Panel Incorrectly Attributed To Appellants, And

### The Panel's Interpretation Of § 2411(c)(4) Not Only Permits Absurd Results But Renders Meaningless Substantial Parts Of The Statute

The USTR is authorized to enter into an agreement, like the SLA, to eliminate unfair trade practices and which commits the foreign government to provide *compensatory trade benefits* that are satisfactory to the USTR.  19 U.S.C. § 2411(c)(1)(D)(iii)(I); *Almond Bros. Lumber Co. v. United States*, No. 12-1393, slip op. at 8 (Fed. Cir. July 1, 2013) ("Slip Op.").  Section 2411(c)(4) "requires that, subject to certain exceptions, the compensatory trade benefits must benefit the economic sector that includes the domestic industry harmed by the unfair trade practice the USTR is seeking to curb [hereinafter "Option 1a"]," *or* "the economic sector as closely related as possible to such economic sector [hereinafter "Option

3

1b"]." Slip Op. at 10.[1]  The "exceptions" to which the panel alluded in Slip Op. at

9 are set out in subsections (A) and (B) of § 2411(c)(4) and provide that either

Option 1a or 1b must be followed "***unless***:"

    (A)    the provision of such trade benefits is not feasible, or

    (B)    trade benefits that benefit any other sector would be more
               satisfactory than such trade benefits [hereinafter "Option 2"].

    In this case, it is undisputed that neither of these statutory exceptions

applies.  Therefore, § 2411(c) authorized the USTR to enter into an agreement to

eliminate unfair trade practices, which:

- committed Canada to provide ***compensatory trade benefits*** that were
  satisfactory to the USTR [§ 2411(c)(1)(D)(iii)(I)] ***and***

- required those compensatory trade benefits to "benefit" either:

---

[1]Although the term "economic sector" is not defined in the statute, the North American Industry Classification System ("NAICS") identifies 20 such economic sectors.  NAICS Association, NAICS Codes by Industry, available at http://www.naics.com/search.htm (last accessed Aug. 5, 2013).  Each economic sector is broken down into economic subsectors, industry groups and by industry. *Id.  See also* NAICS Association, Frequently Asked Questions, comment 18, available at http://www.naics.com/faq.htm (last accessed Aug. 5, 2013).  *The softwood lumber industry is located within the Manufacturing Sector*.  NAICS Association, Six-Digit NAICS Codes & Titles, available at http://www.naics.com/free-code-search/sixdigitnaics.html?code=3133 (last accessed Aug. 5, 2013).  Included within the Manufacturing Sector are many diverse industries, *e.g.*, the burial casket manufacturing industry.  *Id.*

>   Option 1a—the economic sector that includes the domestic industry
>   harmed by the unfair trade practice the USTR is seeking to curb, *or*

>   Option 1b—the economic sector as closely related as possible to it.

The panel, however, paraphrased Appellants' argument as follows:

>   Almond objects to (1) the USTR's choice to distribute funds
>   only to those members of the domestic softwood lumber
>   industry that are members of the Coalition, and (2) the USTR's
>   failure to require that compensation be allocated in proportion
>   to the harm suffered.

Slip Op. at 10, and then concluded that "[n]either of these arguments relates to § 2411(c)(4)'s requirement that the compensatory trade benefits be directed at a particular economic sector," *id.,* and that, "Almond's arguments can succeed only if the Distribution Term is contrary to § 2411(c)(1)(D)(iii)(I)'s requirement that the compensatory trade benefits must be 'satisfactory' to the USTR." *Id.*

The above notwithstanding, the specific argument that Appellants made in Count II of their complaint and presented to the court was that "the [USTR] was mandated by [§ 2411(c)(4)] to require that the SLA commit Canada to distribute the $500 million *to the members of the economic sector which included the*

*adversely affected domestic softwood lumber industry . . .*," but that she had failed

to do so.  Appellants' Reply Br. (Dkt. No. 36) at 1 (emphasis added).[2]

That said, the panel erred in finding that Appellants had failed to make any

assertion related to the § 2411(c)(4) requirement that compensatory trade benefits

be directed at a particular economic sector.

The issue here is, and always has been, whether the USTR complied with

§ 2411(c)(4), *i.e.*, Option 1a.  Contrary to the panel's conclusion, she did not.

The panel properly interpreted § 2411(c)(4) as "*requiring only* that the

compensatory trade benefits 'benefit the economic sector which *includes* the

domestic industry'" (initial emphasis added, second emphasis in original).  Slip

Op. at 11.

Despite this **requirement**, the SLA distributed the $500 million only to a

sliver of the economic sector that includes the softwood lumber industry.

Moreover, the distribution had nothing to do with offsetting the undesired effect

---

[2]Pursuant to the SLA the $500 million was distributed to the members of the Coalition for Fair Lumber Imports.  Appellants' Initial Br. (Dkt. No. 14) at 61. The Coalition is made up of approximately 100 members of the Manufacturing Sector.
    Well prior to the SLA's being executed, the International Trade Commission had publicly identified the relative harm suffered by 240 members of the Manufacturing Sector as a result of Canada's unfair trade practices.  71 Fed. Reg. 31,336, 31,345 (June 1, 2006).

suffered by any recipient as a result of the unfair trade practice being curbed or the fact that many more adversely affected sector members received nothing.[3]

In this regard, the panel incorrectly paraphrased Appellants' argument as being that "compensatory trade benefits do not benefit the economic sector as required under § 2411(c)(4) *unless they benefit every member of the affected domestic industry*." Slip Op. at 11 (emphasis added).[4]  It also stated that Appellants had failed to explain whether the statute is in fact remedial and "if so, how this requires us to construe 'benefit the economic sector which includes the domestic industry' to mean 'benefits every member of the domestic industry.'" *Id.*

First, the statute is remedial.  In addition to Congress's describing the benefits in question as "compensatory," its imposition of a requirement that they *benefit* "the economic sector that includes the domestic industry harmed by the unfair trade practice" the USTR is seeking to curb or "the economic sector as

_____

[3]*See supra* n.2.

[4]The notion that this was Appellants' position was conjured up by the trial court without support in the portions of the record cited (*Almond Bros. Lumber Co. v. United States*, No. 08-00036, -- F. Supp. 2d --, 2012 WL 1372173 (Ct. Int'l Trade Apr. 19, 2012)).  It was thereafter reiterated by the government.  *See* Appellees' Initial Br. (Dkt. No. 22) at 11-12, 20, but refuted by Appellants.  *See* Appellants' Initial Br. at 34 n.17; *see also* Appellants' Reply Br. at 6 n.5.

closely related as possible to such economic sector" bespeaks remediation. Moreover, Congress has made clear its view of the remedial nature of unfair trade practice laws, of which 19 U.S.C. § 2411 is the cornerstone. Indeed, when it enacted the Continued Dumping and Subsidy Offset Act in 2000, Congress said that it was doing so to strengthen our unfair trade laws, *i.e.*, to see that "the remedial purpose of those laws is achieved." Pub. L. No. 106-387, § 1002, 114 Stat. 1549 (codified as amended at 19 U.S.C. § 1675c) (Oct. 28, 2000), repealed by Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).

Second, Appellants never made the reasonless argument set out by the panel on page 11 that compensatory trade benefits do not benefit the economic sector ***unless they benefit every member of the affected domestic industry***. In fact, Appellants have never even asserted that § 2411(c)(4) requires the payment of a portion of the $500 million to every member of the economic *sector* in which the softwood lumber industry is situated.[5]

---

[5]Given the size of the sector in question and the fact that the vast majority of the companies in it were unaffected by Canada's subsidization of its softwood lumber industry, there is no logical reason why every member of the sector should receive a part of the $500 million which the USTR exacted from Canada.

8

What Appellants have consistently argued is that § 2411(c)(4) mandated that the SLA "provide compensatory trade benefits that benefit the economic sector that includes [the domestic softwood lumber industry]" and that the USTR failed to comply with this mandate. *See* Appellants' Initial Br. at 13-14, 20-21; *see generally* Statement of the Issues 1, Appellants' Initial Br. at 1.  Stated differently, the distribution of cash to a few members of the sector, where the amounts distributed have nothing to do with offsetting any undesired effect suffered by any recipient as a result of the unfair trade practice being curbed, does not comply with § 2411(c)(4).  Were this not the case, then absurd results, such as distributing the $500 million merely to one or two members located in a remote segment of the Manufacturing Sector (*e.g.*, members of the burial casket manufacturing industry) would be legally unobjectionable.[6]

Such absurd results would not be possible under Appellants' construction – that § 2411(c)(4) required the SLA to include a provision committing Canada to provide compensatory trade benefits (*i.e.*, the $500 million) to the members of the Manufacturing Sector on the basis of the relative harm, if any, that each sector

---

[6]As Appellants noted, one company actually received $115 million (23%) of the $500 million distributed pursuant to the SLA.  Appellants' Initial Br. at 15 n.10.

9

member had suffered as a result of Canada's subsidization of its softwood lumber industry, *see* Appellants' Initial Br. at 45, *i.e.*, if a member of the sector suffered no harm, then it would receive nothing.

As both the Supreme Court and this Circuit have held, a reading of a statute that could lead to absurd results is to be avoided when the statute can be given a reasonable application consistent with its words and with the legislative purpose. *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940); *Lisanti v. Office of Pers. Mgmt.*, 573 F.3d 1334, 1339 (Fed. Cir. 2009). *Accord* 2A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 45:12 (7th ed. 2012).

That said, the panel rejected Appellants' construction of § 2411(c)(4) on two bases. First, it found that all that is required under the statute is for the benefits exacted from the foreign country to be satisfactory to the USTR, referring to § 2411(c)(1)(D)(iii)(I). Slip Op. at 10, 12. Such a conclusion is, however, erroneous. Section 2411(c)(1)(D)(iii) contains two requirements, *i.e.*, that the binding agreement with the foreign country "commit such foreign country to provide the United States with compensatory trade benefits that (I) are satisfactory to the Trade Representative, ***and*** (II) meet the requirements of [§ 2411(c)(4)]."

10

(Emphasis added).

Consequently, any suggestion that merely because the USTR finds the

exacted trade benefits to be satisfactory, she has fulfilled all of her statutory duties

is incorrect.  Such a construction ignores the fact (plainly set out in §

2411(c)(1)(D)(iii)) that the benefits exacted must also meet the requirements of

§ 2411(c)(4).

Second, the panel concluded that the distribution of $500 million was not

inconsistent with § 2411(c)(4).  Slip Op. at 11-12.  Its construction of that

subsection was based in large part on the existence of Option 2 (*i.e.*, §

2411(c)(4)(B)) which allows the USTR to distribute trade benefits to an economic

sector wholly unrelated to the adversely affected industry, *see* the last paragraph of

Slip Op. at 11.[7]  The panel's position is, however, erroneous and inconsistent with

the rules of statutory construction.

In construing the portion of subsection (c)(4) containing Options 1a and 1b,

the panel recognized that the plain meaning of the term "compensatory" connotes

offsetting an error or undesired effect.  Slip Op. at 11.  It refused, however, to give

-----

[7]Apparently, believing that § 2411(c)(4)(B) had no implication to the
requirements to be met with regard to Option 1a, neither party even addressed the
implications of it in their briefs.

any effect to Congress's inclusion of that term. Consequently, the panel violated the rule that a statutory construction which gives reasonable meaning and effect to *all* the words in the statute is preferred over one which would render parts of the statute inoperative. *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1355 (Fed. Cir. 2005). The panel's construction of § 2411(c)(4) is also inconsistent with the "strong presumption that 'Congress expresses its intent through the language it chooses' and that the choice of words in a statute is therefore deliberate and reflective." *Shoshone Indian Tribe of Wind River Reservation v. United States*, 364 F.3d 1339, 1347 (Fed. Cir. 2004); *see also Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222 (1986) ("Normal principles of statutory construction require that we give effect to the subtleties of language that Congress chose to employ. . . ").

Here, the panel concluded that the use of the term "compensatory" to describe the trade benefits to be provided under either Options 1a or 1b cannot properly be construed as requiring the distribution of the $500 million in accordance with the relative harm suffered by the recipient(s). It reached this conclusion because, under § 2411(c)(4)(B), the USTR is not absolutely required to distribute "compensatory trade benefits" to the members of either the economic

sector in which the affected industry is situated or even a sector "closely related" to it. Slip Op. at 10. She could instead have determined that distribution of the $500 million to an economic sector wholly unrelated to the adversely affected industry would "be more satisfactory." *Id.* at 11.

Of course, the USTR never directed that the $500 million be disbursed to any sector other than the sector in which the softwood lumber industry is located. More importantly, the unexercised right to invoke Option 2 did not affect her other duties under the statute, *i.e.*, the statute provides unequivocally that "***unless***" the USTR decided to provide the trade benefit to an economic sector wholly unrelated to the unfair trade practice being curbed, the trade agreement "***shall provide compensatory trade benefits***" to either the economic sector in which the affected industry is located or the economic sector as closely related as possible to it.

Congress's intent in this regard can be seen in the words used in the statute. That is, (1) the statute mandates the provision of *compensatory* trade benefits to either of the sectors in which some members putatively suffered some harm from the unfair trade practice, ***but*** (2) permits distribution of "trade benefits," without their having to be compensatory, where the recipients are members of an economic sector that is wholly unrelated to the affected industry. § 2411(c)(4)(B). Congress

13

simply meant what it said – *i.e.*, *unless* the USTR wanted to distribute the $500 million to an economic sector that is wholly unrelated to the affected industry, the money was to be ***compensatory*** and, as such, paid to members of an economic sector so as to offset the undesired effect caused by the unfair trade practice, if any, that each had suffered.

The panel's construction of § 2411(c)(4) effectively attributes the same admittedly unfettered authority contained in § 2411(c)(4)(B) with regard to the manner of distributing "trade benefits" to the members of an economic sector that has no connection to the affected industry, to the responsibility of the USTR set out in the body of (c)(4), *i.e.*, her duty to assure the distribution of "***compensatory trade benefits***" to either the economic sector which includes the industry that has been affected or a "closely related" economic sector.

Such a construction, however, makes little sense.  Indeed, why would Congress want or allow the USTR to treat an economic sector that had been adversely affected by the unfair trade practice in the same fashion that she treats an economic sector that had not been affected by the unfair trade practice?  If that had been Congress's intent, it would simply have provided that the *trade benefits* exacted from the foreign government may be distributed, as the USTR sees fit, to:

14

(a) the economic sector that includes the domestic industry harmed by the unfair trade practice the USTR is seeking to curb; (b) the economic sector as closely related as possible to such economic sector; *or* (c) any other economic sector. There would have been no need whatsoever for including the notion that the trade benefits to be distributed in connection with Options 1a or 1b be "compensatory."

The panel's construction gives no meaning to the term "***compensatory*** trade benefits" which, under § 2411(c)(4), is a requisite component of both Options 1a and 1b. It thus runs afoul of the most basic rules of statutory construction noted above. Indeed, such a reading permits absurd results when such results can be avoided if the statute is simply given a reasonable application consistent with its words and the legislative purpose of those words.

## III.    Conclusion

For the reasons set forth above, contrary to the panel's conclusion, Appellants did raise a right to relief that is plausible, *i.e.*, the Court, using its judicial experience and common sense, could draw the reasonable inference that the government is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Accordingly, the CIT's granting of the government's motion to dismiss Count II on this basis should be reversed.

Respectfully submitted,

*/s/ Alan I. Saltman*

Alan I. Saltman
SMITH, CURRIE & HANCOCK, LLP
1025 Connecticut Ave, N.W.
Suite 600
Washington, D.C.  20036
(202) 452-2140
(202) 775-8217
Email: aisaltman@smithcurrie.com

Counsel for Plaintiffs-Appellants

OF COUNSEL:

Alan F. Holmer
SMITH, CURRIE & HANCOCK, LLP
1025 Connecticut Ave, N.W.
Suite 600
Washington, D.C.  20036
(202) 452-2140

Dated:  August 16, 2013

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 16th day of August 2013, I served

**CORRECTED COMBINED PETITION FOR REHEARING OF**

**PLAINTIFF-APPELLANTS ALMOND BROS. LUMBER CO., *ET AL*.** via

electronic means through the Court's electronic filing system.

<u>/s/ Beverly J. Rector</u>
Beverly J. Rector